IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| J M SMITH CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-cv-03176-SRB |
| | ) |
| THE BANK OF MISSOURI, | ) |
| | ) |
| Defendant/Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LYNN MORRIS, TIM STALLION, | ) |
| ROBINSON & CO., LLP, and ABACUS CPAs, | ) |
| LLC, | ) |
| | ) |
| Third-Party Defendants. | ) |

## ORDER

Before the Court is Third-Party Defendant Lynn Morris's ("Morris") Motion for Summary Judgment on the claims asserted against him by Third-Party Plaintiff The Bank of Missouri ("BOM"). (Doc. #262.) For the reasons set forth below, the motion is DENIED.

### I. FACTUAL BACKGROUND

For the purpose of resolving the pending motion, the following facts are uncontroverted or deemed uncontroverted by the Court.[1] Additional facts relevant to the parties' arguments are set forth in Section III.

---

[1] The Court notes that the applicable standard requires the facts to be viewed in the light most favorable to the non-moving party, BOM. At this stage of the proceedings, the Court need not identify all of the facts of this case or all of the factual disputes because it is ultimately the jury's role to find the facts. The purpose of this Order is to identify some genuine issues of material fact and explain why those facts preclude judgment as a matter of law. The relevant facts are taken from the record, including the parties' briefs and exhibits. These facts are simplified to the extent possible.

Plaintiff J M Smith Corporation d/b/a Smith Drug ("Smith Drug") is a South Carolina corporation and its principle place of business is in South Carolina. Smith Drug is a wholesale distributor of pharmaceuticals. BOM is a Missouri community bank, and the branch at issue is located in Ozark, Missouri.

Non-party Family Pharmacy was an independent retail pharmaceutical chain that had operated throughout southwest Missouri.[2] At all relevant times, Morris owned 100% of the shares and/or the member interests of Family Pharmacy. Morris was knowledgeable about Family Pharmacy's financial affairs and condition, including Family Pharmacy's third-party insurance receivables. At all relevant times, Third-Party Defendant Tim Stallion ("Stallion") served as Family Pharmacy's accountant and/or Chief Financial Officer. Morris reviewed and discussed Family Pharmacy's financial statements with Stallion.

In July 2014, BOM issued two loans to Family Pharmacy in the total amount of $362,000. In February 2015, BOM made two additional loans to Family Pharmacy in the amounts of $5,253,000 and $6,205,000. Through June 1, 2017, BOM also provided Family Pharmacy two $2,000,000 revolving lines of credit ("RLOCs").

The loans from BOM to Family Pharmacy had various conditions and covenants. One covenant required that Family Pharmacy provide BOM monthly borrowing base certificates. The base certificates reported accounts receivable which excluded receivables that Family Pharmacy considered to be past due or uncollectible. Family Pharmacy provided the base certificates to BOM, though they were often provided late. The base certificates were certified

---

[2] For purposes of this Order, Family Pharmacy collectively refers to Family Pharmacy, Inc., Family Pharmacy, LLC, and any other related entities.

2

as accurate by Stallion. Family Pharmacy also provided its financial statements and other financial information to BOM.

In 2016, Smith Drug and Family Pharmacy began discussing a possible business relationship. As part of these discussions, Stallion provided Family Pharmacy's financial statements and other related documents to Smith Drug. On May 3, 2017, Stallion notified BOM for the first time that Family Pharmacy had been having these discussions with Smith Drug. On May 9, 2017, Stallion, Devin Bobbett ("Bobbett"), BOM's Senior Vice President (Commercial Lending), and Jana Humble, BOM's Branch Manager, had a lunch meeting with Smith Drug's credit manager, Tony Thompson ("Thompson"). The purpose of the meeting was to have an "open conversation" about Family Pharmacy's "financial aspects." (Doc. #261-45, p. 1.)[3] Morris did not attend the meeting.

According to Smith Drug, Bobbett and Stallion made several false statements at the May 9 meeting, including: (1) Family Pharmacy was currently in compliance with most of the lending covenants and had a "current ratio of at least 1:1;"[4] (2) the only loan covenant that Family Pharmacy was not in compliance with was the 'debt to equity' ratio; and that (3) Family Pharmacy had available credit from BOM from which Family Pharmacy could borrow funds. Smith Drug also alleges it was not informed that Family Pharmacy had failed to timely provide BOM the borrowing base certificates, and that Family Pharmacy had been unable to provide BOM accounts receivable aging reports.

---

[3] All page numbers refer to the pagination automatically generated by CM/ECF.

[4] The "current ratio" refers to a loan covenant which required that Family Pharmacy's "working capital should be maintained at not less than 1:1 including Current Portion of Long Term Debt." (Doc. #179, p. 7.) Smith Drug contends that BOM and Family Pharmacy did not know whether Family Pharmacy complied with the ratio because they did not know what portion of its accounts receivable could be collected.

On or about June 30, 2017, Smith Drug decided to enter into a business relationship with Family Pharmacy. Highly summarized, Smith Drug extended credit to Family Pharmacy and Family Pharmacy purchased drugs from Smith Drug. This business relationship was not a success. By February 2018, Family Pharmacy owed Smith Drug nearly $17,000,000. Also in February 2018, Smith Drug examined Family Pharmacy's accounts receivable and found that they appeared to be significantly inflated. In March 2018, Family Pharmacy wrote down approximately $12 million of its accounts receivable. On April 30, 2018 Family Pharmacy filed for bankruptcy.

On May 16, 2019, Smith Drug filed this lawsuit against BOM. Smith Drug alleges in part that BOM and Family Pharmacy made false representations and omissions during the May 9 meeting, and that Smith Drug relied on such representations and omissions when deciding to extend credit to Family Pharmacy. Smith Drug also alleges that BOM was required, but failed, to disclose certain facts about Family Pharmacy following the May 9 meeting. Smith Drug's Third Amended Complaint asserts the following claims against BOM: Count I—Fraud; Count II—Negligent Misrepresentation; Count III—Fraud and Conspiracy to Commit Fraud; and Count IV—Aiding and Abetting Fraud. Smith Drug alleges that it sustained $16.3 million in damages "as a direct result of BOM's tortious conduct." (Doc. #118, p. 2.)

BOM responded by filing an Answer and a Second Amended Third-Party Complaint. BOM asserts two third-party claims against Morris: Count I—Fraud, and Count II—Negligent Misrepresentation. BOM's "third-party claims against Morris allege that if Smith Drug . . . prevails in its claim against BOM, it will be because Morris provided or authorized others to provide information to BOM (and Smith Drug) that he knew or should have known was false regarding Family Pharmacy's financial condition." (Doc. #289, p. 19.) BOM argues that its

4

"knowledge of Family Pharmacy's financial situation at all times was predicated on information and representations Morris and others at Family Pharmacy provided." (Doc. #289, p. 19.)

Morris now moves for summary judgment under Federal Rule of Civil Procedure 56. Morris argues he is entitled to summary judgment on both counts because (1) BOM cannot show it relied on any of his representations or omissions because any issues regarding Family Pharmacy's financial condition were known by BOM; (2) BOM cannot show it relied on any of his representations or omissions because BOM performed an annual investigation into Family Pharmacy's financial condition; and (3) any claim based on Morris's predictions or projections regarding Family Pharmacy's future financial condition fail as a matter of law. BOM opposes the motion, and the parties' arguments are addressed below.

## II. LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotation marks omitted).

5

## III. DISCUSSION

Under Missouri law, the elements of a fraudulent misrepresentation claim are:

> (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438-39 (8th Cir. 2013) (citing *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131–32 (Mo. banc 2010)).[5] The elements of a fraudulent omission claim are similar, except "a party's silence in the face of a legal duty to speak replaces the first element: the existence of a representation." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc 2007).

A negligent misrepresentation claim has the following elements:

> (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss.

*Renaissance Leasing*, 322 S.W.3d at 134.

### 1. Reliance

Morris argues he is entitled to summary judgment because BOM cannot show that it relied on any information or statements that he provided. Specifically, Morris contends "the undisputed facts have shown that the information BOM claims it allegedly relied upon, particularly the accounts receivable information or more specifically, the lack of an accounts receivable aging report from Family Pharmacy, was *known by BOM for years prior to the Smith*

---

[5] The parties agree, and the Court finds, that Missouri substantive law applies to the claims asserted herein.

*Drug transaction.*" (Doc. #263, p. 18) (emphasis in original). Morris relatedly argues that BOM cannot show reliance because BOM conducted its own annual investigation into Family Pharmacy's financial condition.[6] As set forth below, these arguments are rejected.

"The right to rely on a representation is ordinarily a question of fact for the jury." *Colgan v. Washington Realty Co.*, 879 S.W.2d 686, 690 (Mo. App. E.D. 1994). If "a party makes his own independent investigation, he will be presumed to have been guided by what he learned and the conclusions he reached and will not be permitted to say that he relied on misrepresentations of another and that he was deceived thereby." *Id.* However, simply because a plaintiff "conducts an independent investigation does not preclude his/her claim of reliance . . . if the parties do not stand on equal footing and the facts are peculiarly within the knowledge of the party making the representation and are difficult for the representee to ascertain." *Id.* at 691 (citations and quotation marks omitted).

Upon review of the record, the Court finds that BOM has presented sufficient evidence that it relied on false or inaccurate information provided by Morris or by others at his direction when communicating with Smith Drug. Among other things, BOM has presented evidence that Morris was knowledgeable about Family Pharmacy's financial condition, including accounts receivable. For example, in 2014, Stallion told Morris that Family Pharmacy's accounts receivable were "impossible to fully reconcile" and a "black hole." (Doc. #292-20, p. 2.) Morris does not recall ever telling BOM that he had any concerns about the collectability of Family Pharmacy's receivables or about the accuracy of Family Pharmacy's financial statements. BOM

---

[6] Morris also argues that "*if* and to the extent BOM claims Family Pharmacy (and thereby Morris) provided false *financial* information, such as its year-to-date financial *accounting* records, then BOM is delving into the realm of proper accounting practices and standards–which would require an expert opinion from a person such as a CPA." (Doc. #302, p. 22) (emphasis in original). This conditional argument does not show that summary judgment is warranted based on the absence of expert testimony. Morris may reassert this argument depending on the testimony and evidence introduced at trial.

has also presented evidence that it relied upon the borrowing base certificates (and other financial information) provided by Family Pharmacy, which allegedly did not include a proper calculation of accounts receivable. Finally, BOM has presented evidence that Family Pharmacy wrote down approximately $12 million of accounts receivable in March 2018. Under these circumstances, there are genuine issues of material fact regarding whether Morris made false statements and/or omissions to BOM, and whether BOM relied on those statements and/or omissions when communicating with Smith Drug.

Morris relatedly argues that BOM cannot show reliance on any of his statements or omissions because BOM annually reviewed Family Pharmacy's financial information to determine whether it complied with the loan covenants. However, BOM has presented evidence that its internal review relied in whole or in part on information provided by Family Pharmacy. In addition, Morris has not shown that BOM itself had access to Family Pharmacy's books and records. Under these facts, BOM's compliance review does not negate its claim of reliance. *Colgan*, 879 at 691 (recognizing that "an independent investigation does not preclude his/her claim of reliance . . . if the parties do not stand on equal footing").[7]

### 2. Expectations and Predictions About Future Events

Morris argues that BOM's fraud and negligent misrepresentation claims fail because they are based on his and/or Family Pharmacy's predictions or projections about future value or probability. Morris relies on case law holding that a party does not have the right to rely on a speaker's representation "about expectations and predictions for the future[.]" *Ryann Spencer Grp., Inc. v. Assurance Co. of Am.*, 275 S.W.3d 284, 290 (Mo. App. E.D. 2008). "[P]redictions and projections regarding the future profitability of a business or investment" are similarly

---

[7] Morris also argues that BOM cannot show it was ignorant of the falsity of his alleged representations. That argument is rejected for similar reasons.

deficient. *Dancin Develop., LLC v. NRT Missouri, Inc.*, 291 S.W.3d 739, 744 (Mo. App. E.D. 2009).

But this case law does not foreclose BOM's claims against Morris. As BOM argues, its "claims rely on representations about the current value and collectability of Family Pharmacy's accounts receivable . . . [t]his is a representation regarding the value of outstanding amounts presently due to Family Pharmacy." (Doc. #289, p. 28.) The current record does not show that the claims against Morris are based on "predictions," "projections," or future profitability. *Dancin Develop.*, 291 S.W.3d at 744. Instead, BOM claims that Morris knew or had reason to believe that Family Pharmacy's accounts receivable were inflated, and/or that other financial information submitted to BOM was false and misleading. Consequently, the Court rejects Morris's argument that BOM's claims are based on "predictions and projections." (Doc. #302, p. 23.)

## IV.  CONCLUSION

Accordingly, it is hereby ORDERED that Third-Party Defendant Lynn Morris's Motion for Summary Judgment (Doc. #262) is DENIED. The parties' request for oral argument on the pending motion is denied as unnecessary and as moot.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated:  May 4, 2021