IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| J M SMITH CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-03176-SRB |
| | ) | |
| THE BANK OF MISSOURI, | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LYNN MORRIS, TIM STALLION, | ) | |
| ROBINSON & CO., LLP, and ABACUS CPAs, | ) | |
| LLC, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## ORDER

Before the Court is Third-Party Defendant Tim Stallion's ("Stallion") Motion for Summary Judgment on the claims asserted against him by Third-Party Plaintiff The Bank of Missouri ("BOM"). (Doc. #276.) For the reasons set forth below, the motion is DENIED.

**I. FACTUAL BACKGROUND**

For the purpose of resolving the pending motion, the following facts are uncontroverted or deemed uncontroverted by the Court.[1] Additional facts relevant to the parties' arguments are set forth in Section III.

---

[1] The relevant facts are taken from the record, including the parties' briefs and exhibits. Only those facts necessary to resolve the pending motion are discussed below, and those facts are simplified to the extent possible.

During the relevant time period, non-party Family Pharmacy was a large, independent pharmacy chain in the State of Missouri.[2] Stallion is a certified public accountant. In February 2013, Family Pharmacy hired Stallion as an accountant. In March 2016, Stallion became Family Pharmacy's chief financial officer and remained in that position during all relevant times.

In July 2014, BOM issued two loans to Family Pharmacy in the total amount of $362,000. In February 2015, BOM made two additional loans to Family Pharmacy in the amounts of $5,253,000 and $6,205,000. Through June 1, 2017, BOM also provided Family Pharmacy two $2,000,000 revolving lines of credit ("RLOCs").

The loans from BOM to Family Pharmacy had various conditions and covenants. One covenant required that Family Pharmacy provide BOM monthly borrowing base certificates. The base certificates reported accounts receivable which excluded receivables that Family Pharmacy considered to be past due or uncollectible. Stallion prepared and provided the base certificates to BOM, though he often provided them late. The base certificates were certified as accurate by Stallion. Family Pharmacy also provided BOM its financial statements and other financial information.

In 2016, Plaintiff J M Smith Corporation d/b/a Smith Drug ("Smith Drug") and Family Pharmacy began discussing a possible business relationship. As part of these discussions, Stallion, BOM, and Smith Drug had a meeting on May 9, 2017 (the "May 9 meeting"). Smith Drug alleges that BOM and Stallion made false statements and failed to disclose certain facts about Family Pharmacy's financial condition during this meeting. Among other things, Smith

---

[2] For purposes of this Order, Family Pharmacy collectively refers to Family Pharmacy, Inc., Family Pharmacy, LLC, and any other related entities.

Drug alleges that BOM and Stallion falsely represented that Family Pharmacy was currently in compliance with most of its lending covenants, and had a "current ratio of at least 1:1."[3]

On or about June 30, 2017, Smith Drug decided to enter into a business relationship with Family Pharmacy. Highly summarized, Smith Drug extended credit to Family Pharmacy and Family Pharmacy purchased drugs from Smith Drug. This business relationship was not a success. By February 2018, Family Pharmacy owed Smith Drug nearly $17,000,000. Also in February 2018, Smith Drug examined Family Pharmacy's accounts receivable and found that it appeared to be significantly inflated. In March 2018, Family Pharmacy wrote down approximately $12 million of its accounts receivable. On April 30, 2018 Family Pharmacy filed for bankruptcy.

On May 16, 2019, Smith Drug filed this lawsuit against BOM. Smith Drug alleges in part that BOM and Stallion made false representations and omissions during the May 9 meeting, and that Smith Drug relied on such representations and omissions when deciding to extend credit to Family Pharmacy. Smith Drug also alleges that BOM was required, but failed, to disclose certain facts about Family Pharmacy following the May 9 meeting. Smith Drug's Third Amended Complaint asserts the following claims against BOM: Count I—Fraud; Count II—Negligent Misrepresentation; Count III—Fraud and Conspiracy to Commit Fraud; and Count IV—Aiding and Abetting Fraud. Smith Drug alleges that it sustained $16.3 million in damages "as a direct result of BOM's tortious conduct." (Doc. #118, p. 2.)[4]

---

[3] The "current ratio" refers to a loan covenant which required that Family Pharmacy's "working capital should be maintained at not less than 1:1 including Current Portion of Long Term Debt." (Doc. #179, p. 7.) Smith Drug contends that BOM and/or Stallion did not know whether Family Pharmacy complied with the ratio because it was unknown what portion of Family Pharmacy's accounts receivable could be collected.

[4] All page numbers refer to the pagination automatically generated by CM/ECF.

BOM responded by filing an Answer and a Second Amended Third-Party Complaint. BOM asserts two third-party claims against Stallion: Count I—Fraud, and Count II—Negligent Misrepresentation. BOM alleges in part that:

> If Smith Drug succeeds in proving that Family Pharmacy's accounts receivable were inflated and that its current ratio was less than 1:1, then the contrary information in the Family Pharmacy financial statements and borrowing base certifications that Family Pharmacy . . . and Stallion provided to BOM is information that Family Pharmacy . . . and Stallion knew or should have known was false and insufficient to disclose Family Pharmacy's true and complete financial condition . . . .

(Doc. #179, p. 83, ¶ 59.) BOM claims that Stallion is liable to BOM "to the extent BOM is adjudged liable to Smith Drug." (Doc. #179, pp. 84-85.)

Stallion now moves for summary judgment under Federal Rule of Civil Procedure 56. Stallion argues that BOM is required—but failed—to produce expert testimony in support of its claims against him. BOM opposes the motion, and the parties' arguments are addressed below.

## II. LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party."

4

*Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotation marks omitted).

### III. DISCUSSION

Under Missouri law, a negligent misrepresentation claim has the following elements:

> (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. banc 2010).[5]

The elements of a fraudulent misrepresentation claim are:

> (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Freitas v. Wells Fargo Home Mortg., Inc*., 703 F.3d 436, 438-39 (8th Cir. 2013) (citing *Renaissance Leasing, LLC*, 322 S.W.3d at 131–32.

Stallion argues that BOM was required, but failed, to produce expert testimony in support of these claims. With respect to the negligent misrepresentation claim, Stallion contends that:

> BOM must present evidence as to whether Mr. Stallion, in the course of his work as Family Pharmacy's accountant and CFO, satisfied the applicable standard of care in preparing and providing the relevant financial information. This cannot be done without expert testimony, which BOM does not have. The accounting profession, and the preparation of a company's financial statements, is governed by a complex set of standards, principles, rules and procedures as to the compilation and evaluation of the financial information from which balance sheets, income statements and other accounting documents are created. Without expert testimony, a jury could not reasonably evaluate the Family Pharmacy financial statements over a multi-year period to determine if they were accurate, and then determine

---

[5] The parties agree, and the Court finds, that Missouri substantive law applies to the claims asserted herein.

5

> whether, based on the information then available to Mr. Stallion, he knew or
> should have known that they were not accurate.

(Doc. #277, p. 6.)

Stallion contends that he is entitled to summary judgment on the fraud claim for "very similar" reasons. (Doc. #277, p. 8.) Stallion argues that "BOM's experts have given no opinion that Mr. Stallion breached a standard of care with respect to the accounting, or that he knew the accounting information was false or knowingly disregarded the truth or falsity of the same." (Doc. #277, p. 9.)

In response, BOM argues that its claims against Stallion "are ***not professional liability*** claims. Stallion is sued in his ***individual capacity*** for fraud and ordinary negligent misrepresentation and the fact that he is an accountant is beside the point . . . BOM's claims . . . do not have 'professional duty' as an element, nor do they require expert testimony." (Doc. #291, p. 12) (emphasis in original). BOM further argues that a jury is capable of understanding the evidence against Stallion without expert testimony. As explained below, the Court finds that Stallion is not entitled to summary judgment.

First, duty or failure to meet a professional standard of conduct is not an element of a fraudulent misrepresentation claim. *Freitas*, 703 F.3d at 438-39; *Renaissance Leasing, LLC*, 322 S.W.3d at 131–32. Stallion's argument regarding the lack of expert testimony on "a standard of care" is therefore rejected. In addition, fraud "may be proven in its entirety by circumstantial evidence." *Chesus v. Watts*, 967 S.W.2d 97, 113 (Mo. App. W.D. 1998). As a result, BOM is not required to produce expert testimony showing that Stallion knew his statements were false.

Second, Stallion's reply brief acknowledges that "expert testimony is most often not required to prove a fraud or misrepresentation claim." (Doc. #303, p. 10.) Nonetheless, Stallion argues that "it is the specific claims that [BOM] has made in this case, and the detailed nature of

6

the accounting procedures and standards which are directly at issue, which requires expert testimony." (Doc. #303, p. 10.)

The Court recognizes that, in general, accounting standards and procedures may involve complicated issues beyond the knowledge of the average juror. However, Stallion's arguments are conclusory and he fails to specifically explain why BOM's claims require expert testimony. The Court agrees with BOM that Stallion's "suggestion that the evidence in this case is complex refers to evidence generally and not to specific evidence of whether Stallion made fraudulent or negligent misrepresentations." (Doc. #291, pp.15-16.) BOM further states that the jury can readily determine, without expert testimony, whether Stallion inflated Family Pharmacy's accounts receivable by including stale and past due amounts.[6]

Under these circumstances, and on the current record, the Court finds that Stallion has failed to show he is entitled to summary judgment for lack of expert testimony. *Smith v. Najafi*, 584 S.W.3d 389, 396 (Mo. App. 2019) (recognizing that "expert testimony is only required when a fact at issue is so technical or complex that no fact-finder could resolve the issue without it.") Stallion may, however, reassert this argument at trial depending on the facts and evidence introduced.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that Third-Party Defendant Tim Stallion's Motion for Summary Judgment (Doc. #276) is DENIED. BOM's request for oral argument on the pending motion is denied as unnecessary and as moot.

---

[6] BOM also notes that Stallion "does not even attempt to establish the absence of a genuine issue of material fact [regarding the truth or accuracy of his representations] beyond . . . claiming that expert testimony is needed." (Doc. #291, p. 17.)

**IT IS SO ORDERED.**

                                                    /s/ Stephen R. Bough
                                                    STEPHEN R. BOUGH
                                                    UNITED STATES DISTRICT JUDGE

Dated: May 4, 2021

8

Case 6:19-cv-03176-SRB   Document 307   Filed 05/04/21   Page 8 of 8